**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

JEROME NICHOLAS COLE,              )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      No. 1:22-CV-0078 ACL
                                   )
MIKE BARTON, et al.,               )
                                   )
            Defendants.            )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of self-represented plaintiff Jerome Nicholas

Cole for leave to commence this civil action without prepayment of the required filing fee. [ECF

No. 2]. Having reviewed the motion and the financial information submitted in support, the Court

has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an

initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons

discussed below, the Court finds that plaintiff's complaint is subject to dismissal pursuant to 28

U.S.C. 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is

required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's

account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly

payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a *certified* prison account statement, instead he has submitted an "inmate bank transaction list" from the Wayne County Sheriff's Office. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a *certified* copy of his account statement in support of his claim.

<b>Legal Standard on Initial Review</b>

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded

facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff, a pretrial detainee currently housed at the Wayne County Jail in Greenville, Missouri (the "Jail"), filed the instant action on the Court's Prisoner Civil Rights Complaint form pursuant to 42 U.S.C. § 1983. [ECF No. 1]. Plaintiff names seven individuals as defendants in this action: Mike Barton (Sheriff of Ripley County); Jordan Cantoni (Public Defender); Scott D. Dale (Public Defender)[1]; Adam Robinett (Deputy, Ripley County); Charles Roper (Deputy, Ripley County); Edward M. Thompson (Prosecutor) and Paul E. Oesterreicher (Prosecutor). Plaintiff asserts he is suing defendants Dale and Roper in their official capacities only but is silent as to the capacity he intends to sue the remaining five defendants.

In the section of the form complaint designated to provide his statement of claim, plaintiff writes:

[1]Attorney Scott Dale entered his appearance in *State v. Cole*, Case No. 21RI-CR00557-001 (36th Judicial Circuit, Ripley County Court) as a "Special Public Defender" on behalf of plaintiff on January 3, 2022.

3

Charles Roper and Adam Robinett on 10-21-2021 showed up without COV-19 mask and I caught COV-19 virus set in Wayne County and received no medical help at all, plus officers did not have the body worn cameras and they acted in bad faith and lieing [sic] about it they said they put me back of the police car for my protection instead of arresting Bryan Hart who was breaking the law they never read me my Miranda rights. The cops assaulted me and while they were trying to arrest me and assault me without legal probable cause I was choked and Charles Roper when I came too [sic] out of my black out was trying to bite my finger off. I have never been legally arraigned in Div. 1 Civil Court in Wayne County. And I have been denied mental help been setting in Jail for no reason for 9 months. My grandma Bonnie Cole is a witness to this horrible police kidnapping and assault illegal arrest. Ripley County D.A. have been trying to keep my grandma out of court.

. . .

Jordan Canton: Public Defender for 36th District Court Ineffective Assistance of Counsel.

1. Did not suspena [sic] my grandma for pre-limanar [sic] evidentiary hearing and did not put me on the stand.
2. Did not allow me to cross examine the state's witness.
3. Officer's Either.
4. And did not file fast and speedy trial and never talk to me more than 5 minutes.

. . .

Edward M. Thompson State Attorney and Assistant State Attorney Paul Oesterreicher have been denying me my mental health treatment medical negligect [sic]. They keep filing motion to continue postone.

. . .

Mike Barton is the Sheriff and he allowed the officers to work in public with COV-19 mask and no Body Worn Cameras.

. . .

The Officers Charles Roper and Adam Robinett caused all this legal personal injury by malicious arrest illegal due process.

In addition to the above, plaintiff also alleges that defendant Roper "allowed a citizen of

Ripley County" to verbally threaten plaintiff. Plaintiff appears to be referring to an individual

whom he got into an altercation with on October 21, 2021.

Plaintiff also alleges that he was tased in the genitals by defendant Adam Robinett on an

undisclosed date.[2]

---

[2]Plaintiff states in a conclusory manner in the supplement to his complaint that he was assaulted by "Charles Roper and Adam Robinett" after he was detained unlawfully in the back seat of the officers' police car on October 21, 2021. Plaintiff states that a taser was used by Robinett on this same date, but he does not articulate the events leading up to the use of the taser Plaintiff's allegations relating to what he is alleging

4

In a supplement plaintiff filed on August 11, 2022 [ECF No. 7], he asserts that he is

entitled to an "injunction for relief from duress." Plaintiff states that he is seeking relief under the

Equal Protection Clause of the 14th Amendment to stop District Attorney Edward Thompson from

"misuse and abusing" the governmental powers in pursuing a criminal action against him.[3] In the

supplemental brief, plaintiff also repeats his allegations from the body of his complaint. Although

titled, "Original Writ in Injunction," plaintiff does not seek injunctive relief in his supplemental

complaint. Rather, plaintiff seeks monetary damages in this action against defendants.

## Plaintiff's State Court Criminal Action

On October 22, 2021, a criminal complaint was filed against plaintiff charging him with

two counts of felony assault in the second degree (special victim), resisting arrest, misdemeanor

tampering with the property of another, misdemeanor trespass and misdemeanor unlawful

possession of drug paraphernalia. *See State v. Cole*, No. 21RI-CR00557 (36th Judicial Circuit,

Ripley County Court). The probable cause statement accompanying the complaint, filed by Deputy

Adam Robinett, stated, in pertinent part:

> On 10/21/2021, I Deputy Adam Robinett, was dispatched to 6217 21 N. for a report
> of a Burglary in Progress. I responded to the area with Deputy Charles Roper.
> Upon arrival I observed two white male subjects standing by the road and a white
> female standing near the residence. I also observed a No Trespassing sign at the
> beginning of the driveway. Once I exited my patrol vehicle one of the males
> approached me. He identified himself as Brian Hart, the father of the reporting

to be an unlawful use of force are couched in nothing more than "legal conclusions" and "[t]hreadbare
recitals of the elements of a cause of action supported by mere conclusory statements" that the Supreme
Court has found deficient. *Iqbal,* 556 U.S. at 678. The Court is not required to accept such conclusions as
true. *See Torti v. Hoag,* 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal
conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief
above the speculative level"). Regardless, plaintiff fails to bring these allegations against defendants in their
individual capacities, and therefore, his assertions fail to state a claim for relief.

[3]Plaintiff fails to allege a violation of the Equal Protection Clause. He first and foremost fails to assert that
he is a member of a suspect class. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008).
He also fails to argue that similarly situated people who were not in a suspect class were treated differently,
and that such treatment was based on a fundamental right. *In re Kemp,* 894 F.3d 900, 909 (8th Cir. 2018).

party. Mr. Hart stated that the other male he had been speaking with was Jerome Cole. Mr. Hart stated that his daughter, Maddie Hart-Harris RPNIC, had observed Mr. Cole shining a flashlight around the vehicles and shed. I then approached Maddie. She stated that she had heard her dogs barking and looked outside. She stated that she saw a male subject looking into her shed and her truck. She stated that the dome light of the truck was on and that the doors of the vehicle were open. She stated that she first thought that it was her Husband returning home from bow hunting but realized that it was not her Husband. She told me that she began yelling repeatedly "get out of my yard", "who are you," and "you need to leave". Maddie stated that while she was yelling at the subject he continued to go through both vehicles and the shed. She stated that at that time she went back into her house and put her kids into a secure room. She then went out of the front door where she saw the subject walking and she again yelled at the subject "who are you and why are you here". Maddie stated that the subject looked at her and stated "don't worry about it shut the fuck up". It was at this time that Maddie made the Emergency call. Maddie stated that her father and father-in-law arrived and talked to the subject until our arrival while she locked the doors and remained in the house. Maddie stated that she was terrified and in fear for her life.

At this time I went to speak with Mr. Cole. I asked him what was going on and he told me that he was looking for a dog that had ran off from his grandmother. I informed Mr. Cole that he was being detained until my investigation was complete. I then checked Mr. Cole for weapons and asked him if he had anything on him that I should know about. He gave me a metal pipe that he stated was for Marijuana and two pocket knives. I also removed a large fixed blade knife from a sheath on his hip that was covered by his jacket. I then placed him into my patrol car. I again made contact with the reporting party and asked her if she wished to fill out a statement and file for charges. She stated that she did. I then provided her with a statement sheet and asked if anything was missing from her vehicles. She stated that to her knowledge nothing was missing. I was then advised that Mr. Cole had walked up the road slightly when Maddie's father and father-in-law had arrived. Myself and Deputy Roper walked the area looking to see if anything had been left in the area. We did not locate anything.

It was at this time Maddie had finished her statement and again informed me that she wished to have charges filed. Myself and Deputy Roper then approached my patrol car and asked Mr. Cole to step out. I informed Mr. Cole that he was under arrest for Trespassing and for Tampering with a Motor Vehicle. Mr. Cole became agitated and starting saying, "this is bullshit I didn't mess with anyone's truck." I advised Mr. Cole to tum around and place his hands behind his back and reached for Mr. Cole's hand. Mr. Cole used the palm of both of his hands and struck me in the chest causing me to stumble backwards. Deputy Roper grabbed Mr. Cole in a vascular neck restraint and advised him to stop resisting and put his hands behind his back. I advised Mr. Cole if he did not stop resisting and put his hands behind his back he would be tazed [sic]. Mr. Cole did not comply. I then announced Tazer [sic] loudly three times and deployed my Department issued tazer [sic]. Deputy

6

Roper then released Mr. Cole thinking the tazer [sic] was working. Mr. Cole then began trying to push Deputy Roper and myself away and actively telling us to back up and let him go. Deputy Roper then placed Mr. Cole in a bear hug and assisted him to the ground utilizing a standing leg sweep. I grabbed Mr. Cole around the legs and we went to the ground. I repeatedly ordered Mr. Cole to stop resisting. At this time I was struck by Mr. Cole on the left side of my face and the vision in my left eye became blurry. I then deployed my department issued tazer [sic] with a drive stun. I continued to tell Mr. Cole to stop resisting and place his hands behind his back. I heard Deputy Roper yelling to Mr. Cole to take his hand off of Deputy Roper's gun. I then observed Mr. Cole's hand on Deputy Roper's department issued handgun. I reached over Deputy Roper and attempted to dislodge his hand from Deputy Roper's weapon. Mr. Cole's hand then released Deputy Roper's weapon. I continued to order Mr. Cole to stop resisting and to place his hands behind his back. Mr. Cole complied and stopped resisting and Deputy Roper was able to get Mr. Cole in handcuffs. I then noticed Deputy Roper was bleeding from the mouth and from his left eye and advised dispatch to send EMS. We assisted Mr. Cole off the ground and to my patrol vehicle. I patted Mr. Cole down for any other weapons and placed him in the back seat of my patrol vehicle. Deputy Roper removed 1 tazer [sic] barb from Mr. Cole's right hip area and advised me that the other barb was not there.

At this time EMS arrived on scene along and checked on myself and Deputy Roper. EMS the checked on Mr. Cole. While EMS was checking on Mr. Cole I asked how many of the subjects at the scene had observed the altercation with Mr. Cole. I was advised that they needed multiple statements. I provided six statements and advised the witnesses to write everything that they saw and heard. I was informed that the statements would be turned in on the morning of 10/22/2021.

Mr. Cole was secured in belly chains and leg shackles and transported to the Wayne County Jail by Deputy Roper.

On December 2, 2021, an Information was filed charging plaintiff with two counts of felony assault in the second degree (special victim), resisting arrest, misdemeanor tampering with the property of another, misdemeanor trespass and misdemeanor unlawful possession of drug paraphernalia. *See State v. Cole,* No. 21RI-CR00557-01 (36th Judicial Circuit, Ripley County Court). Plaintiff waived his formal arraignment in the matter on December 6, 2021. An order requiring plaintiff to undergo a competency evaluation was entered on March 16, 2022. The matter is currently set for trial on October 17, 2022. *Id.*

7

**Discussion**

Having thoroughly reviewed and liberally construed plaintiff's complaint, the Court concludes it is subject to dismissal.

**A. Official Capacity Claims**

Plaintiff explicitly indicates he is suing two of the defendants in their official capacities but is silent as to the remaining five defendants. Personal-capacity suits typically allege that a government official is individually liable for the deprivation of a federal right as a result of actions taken outside the scope of his official duties, but under color of law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In such suits, the face of the complaint must clearly notify the defendant that he may be personally liable for any damages arising out of the suit. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). When a plaintiff does not specify whether the defendant is being sued in his personal or official capacity, the court interprets the complaint as including only official-capacity claims. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995). This pleading requirement is strictly enforced by the Eighth Circuit. *See Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997). Thus, the Court will interpret the instant complaint as stating official capacity claims against all seven defendants.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public

employees in their official, rather than individual, capacities sues only the public employer");
and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public
official in his official capacity is actually a suit against the entity for which the official is an
agent"). To prevail on an official capacity claim, the plaintiff must establish the governmental
entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

A Sheriff's Office, however, is not a distinctly suable entity under 42 U.S.C. § 1983. *See
Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (1992); *Owens v. Scott Cty. Jail*, 328 F.3d
1026, 1027 (8th Cir. 2003) ("county jails are not legal entities amenable to suit"); *De La Garza v.
Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of
county jail and sheriff's department because they are not suable entities). Consequently, plaintiff's
complaint is legally frivolous and/or fails to state a claim against defendants Mike Barton, Adam
Robinett and/or Charles Roper in their official capacities who appear to be employees of the Ripley
County Sheriff's Department.

Even if Ripley County is substituted as defendants' employer, plaintiff still fails to state a
claim. Unlike the Sheriff's Department, a local governing body such as Ripley County can be sued
directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.
658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental
entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the
constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom,
or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079
(8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing
"claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate
training, which is an extension of the same").

9

Here, plaintiff provides no allegations that Ripley County has an unconstitutional policy or custom that makes it liable for the alleged violations of his constitutional rights. Indeed, there is no mention whatsoever of any policy or custom in the complaint, and there are no allegations regarding a pattern of similar constitutional violations by other Ripley County employees, such as the Sheriff's deputies or the prosecutors in this action.[4] Ripley County is not mentioned in the statement of the claim. Therefore, plaintiff's official capacity claims against all defendants are subject to dismissal. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

Furthermore, as to plaintiff's allegations against his public defenders, those claims are also subject to dismissal. "The essential elements of a [42 U.S.C.] § 1983 claim are: (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020). However, a defense attorney, whether appointed or retained, does not act under color of state law, and thus cannot be liable for the alleged deprivation of constitutional rights under 42 U.S.C. § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); *Christian v. Crawford*,

---

[4]Additionally, defendants Thompson and Oesterreicher are entitled to immunity from suit in this action. *See Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982); *Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980).

10

907 F.2d 808, 810 (8th Cir. 1990) (stating that the Eighth Circuit "has repeatedly held that both retained and appointed attorneys are not liable for deprivations of constitutional rights under 42 U.S.C. § 1983 for the reason that they do not act under color of state law"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel").

For all of the aforementioned reasons, this action is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [ECF No. 2] is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 8] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's supplemental complaint, titled "Original Writ in Injunction," [ECF No. 7] is **DENIED**.

11

**IT IS HEREBY CERTIFIED** that an appeal from this Order would not be taken in good faith.

An Order of Dismissal shall accompany this Memorandum and Order.

Dated this _13th_ day of October, 2022.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

12